UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:22-CV-00115-EBA

DEBORAH TUCKER,                                                                                                   PLAINTIFF,

V.                   **MEMORANDUM OPINION & ORDER**

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,                                       DEFENDANT.

### INTRODUCTION

Plaintiff, Deborah Tucker, appeals the Acting Social Security Commissioner's denial of her application for Social Security Disability and Supplemental Security Income benefits. [R. 1]. Alternatively, Tucker requests that the Court remand this case for a new hearing on the matter. [*Id.*]. Tucker alleges that the Administrative Law Judge ("ALJ") incorrectly assessed her residual functional capacity ("RFC")[1] for two reasons: (1) she failed to consider Tucker's Lumbar Degenerative Disc Disease as a severe medically determinable impairment; and (2) she failed to adequately consider and articulate the weight given to Jessica Cox, APRN's opinion. [R. 16]. Tucker and the Acting Commissioner filed briefs in support of their respective positions. [R. 16; R. 20]. So, this matter is ripe for review. The Court will affirm the Acting Commissioner's final decision for the reasons below.

### FACTS AND PROCEDURAL HISTORY

Deborah Tucker is an experienced cosmetologist who, at the time of her application for Social Security and Disability benefits, had worked in this field for 15 years. [R. 11 at pg. 33].

---

[1] Residual functional capacity "is the most an adult can do despite his or her limitation(s)." 84 Fed. Reg. 22,924, 22,925 (May 20, 2019).

Unfortunately, Tucker suffers from multiple medical conditions, including but not limited to recurrent arrhythmias, obesity, subcutaneous lupus, hypertension, sleep apnea, degenerative disc disease, vertigo, and various mental impairments. [*Id.* at pgs. 24, 129–30, 139]. Tucker has not worked since April 1, 2014. [*Id.* at pg. 24, 130]. On June 24, 2019, Tucker applied for disability and disability insurance benefits and supplemental security income. [*Id.* at pg. 21].[2]

Tucker's application for disability benefits was denied initially on December 4, 2019, and on reconsideration on December 1, 2020. [*Id.* at pgs. 21, 141, 162]. (concluding that Tucker has "the residual functional capacity to perform medium work…"). Thereafter, she requested a hearing before an ALJ. After the hearing, the ALJ found that Tucker is not disabled within the meaning of Title II. [*Id.* at pgs. 26-34]. Tucker requested review by the Social Security Administration's Appeals Council, but to no avail. [*Id.* at 5–7]. Because the Appeals Council declined review, the ALJ's decision became the Acting Commissioner of Social Security's final decision, which is subject to judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

Now, Tucker requests judicial review of the ALJ's decision. [R. 1]. She presents two issues in his appeal. *First*, Tucker argues that the Administrative Law Judge's determination that her Lumbar Degenerative Disc Disease is not a severe medically determinable impairment is not supported by substantial evidence because it disregards Tucker's subjective complaints of pain and supporting imaging studies. [R. 16 at pgs. 3–4]. *Second*, Tucker argues that the Administrative

---

[2] Tucker had also previously filed for disability and social security benefits in June of 2015. [*Id.* at pg. 21]. As the ALJ explained in her decision, "[t]his claim was denied initially, upon reconsideration, and in a hearing decision issued by Administrative Law Judge Robert Bowling on June 12, 2018 (Exhibit B1A). The Appeals Council denied the claimant's request for review on April 17, 2019 (Exhibit B2A), and there is no indication of further appeal in the record." [*Id.*]. ALJ Bowling's decision is thus final and binding. [*Id.*]. Therefore, while Tucker has alleged her disability began in April of 2014, the period at issue in this case is from June 13, 2018, to the present. [*Id.*]."

Law Judge failed to properly articulate the weight given to the opinion of Jessica Cox, an APRN. [*Id.* at pgs. 4–6].

STANDARD OF REVIEW

A court reviewing the Social Security Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It's important to note that where, as here, the Appeals Council declines to review an Administrative Law Judge's decision, that decision becomes the final decision of the Commissioner for purposes of judicial review. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

A reviewing court owes the Commissioner great deference.[3] In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision

---

[3] "Precisely because agency action often takes the form of determination of general statutory principles, agencies are often in the position of architects carrying out a commission whose broad goals have been set by Congress. Judges should thus afford agencies leeway to carry out the task of the architect." ADRIAN VERMEULE, COMMON GOOD CONSTITUTIONALISM 152 (2022).

is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the Administrative Law Judge's decision must stand if supported by substantial evidence. *Id.*; s*ee also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

## ANALYSIS

In his appeal, Tucker asks this Court to review whether the ALJ properly considered: (1) the severity of her Lumbar Degenerative Disc Disease; and (2) the weight given to the opinion of Jessica Cox, an APRN. Both issues concern whether the ALJ's decision was based on substantial evidence as required under 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence*, shall be conclusive…" (emphasis added).

The Acting Commissioner argues that Tucker's arguments ask this Court to "reweigh the evidence, which it should not do on substantial evidence review." [R. 20 at pg. 1]. Furthermore, she contends that the ALJ's decision should be affirmed because "it would be possible for a reasonable factfinder to reach the same conclusion—that Plaintiff was not disabled—as the ALJ did here…" [*Id.* at pg. 3]. The Acting Commissioner is correct that the ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)) (internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether

it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* at 1154 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(4). The five steps are:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, if the ALJ reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's residual functional capacity, age, education, and past work experience. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Tucker's arguments take issue with

the ALJ's determination of the severity of her lumbar degenerative disc disease and the weight accorded to nurse Jessica Cox's opinion, which implicate steps two, three, and four of this analysis.

A

Tucker argues that the Administrative Law Judge failed to properly consider her Lumbar Degenerative Disc Disease as a severe medical impairment. [R. 16 at pg. 3]. Tucker claims that the ALJ "virtually ignored [her] lumbar impairment," and that her subjective complaints of pain and corroborating imaging studies dictated a finding that her lumbar condition was a severe medical impairment. [*Id.* at pg. 4]. Tucker primarily cites to *Daley v. Secretary of Health and Human Services*, 822 F.2d 1088 (6th Cir. 1987) for the proposition that "[i]f the medical evidence of record demonstrates that the claimant's condition was established by medically acceptable clinical diagnostic techniques, and she shows that this impairment significantly limits her ability to perform basic work-related activities, then an ALJ's conclusion that the impairment is not severe is not supported by substantial evidence." [*Id.*]

In opposition, the Acting Commissioner argues that the ALJ's decision to not categorize Tucker's lumbar condition as a severe impairment is irrelevant because the ALJ did find in Tucker's favor that she suffered from a severe medical impairment—recurrent arrhythmias. [R. 20 at pg. 4]. In addition, the Acting Commissioner argues that "Plaintiff fails to explain how the mere diagnosis of a lumbar spine disorder establishes additional limitations beyond what the ALJ assessed in the RFC," and therefore, "the mere fact that the ALJ did not list a low back impairment at step two is legally irrelevant and not reversible error." [*Id.* at pg. 5].

Pursuant to 20 C.F.R. § 404.1520(c), an ALJ can only find that an impairment or combination of impairments are severe if they "significantly limit[] your physical or mental ability to do basic work activities." The Sixth Circuit has interpreted this determination as a *de minimis*

burden meant to "screen out totally groundless claims." *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009). "After an ALJ makes a finding of severity as to even one impairment, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." *Nejat*, 359 F.App'x at 577 (quoting Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5) (internal quotation marks omitted). Finally, the Sixth Circuit has previously held that "when an ALJ considers all a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)). For example, in *Nejat* the Sixth Circuit found that even though the ALJ had not classified several of the applicant's impairments as severe, the fact the ALJ did qualify other medical conditions as severe impairments meant "even if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of Nejat's impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless." *Id.* (citing *Maziarz* 837 F.2d at 244).

Here, there is no dispute that the ALJ classified Tucker's recurrent arrythmias as a severe medical impairment. [R. 16 at pg. 2; R. 11 at pg. 24]. The ALJ also made a finding in her opinion that "in accordance with Social Security administration policy and procedure, the undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." [R. 11 at pg. 24]. In her RFC assessment, the ALJ contemplated and discussed Tucker's various impairments, both mental and physical, and expressly discussed the fact that "[p]rimary care studies of her lumbar spine continued to note mild degenerative disk disease with no fracture." [*Id.* at pg. 30]. In addition, the

ALJ noted that "clinical studies of her cervical spine, lumbar spine, shoulders, and knees note grossly mild irregularities, with no signs of neurologic or musculoskeletal acute complications," and that "[p]hysical assessments repeatedly noted grossly normal gait, station, ranges of motion and strength, with no evidence of a need for an assistive device to aid mobility. Furthermore, the record reflects treatment that was entirely conservative, routine, and performed on an outpatient basis, with no evidence of acute complications requiring hospitalization or further evaluation with a specialist." [*Id.* at pg. 31]. Finally, the ALJ notes that her evaluation "is not limited to the objective findings and must account for her subjective symptom complaints and their functional effect in accordance with Social Security Ruling 16-3p," but that "the lack of physical restriction present on either physical assessment or in regular functional capacity supports a capability to perform medium work activity." [*Id.* at pgs. 31–32].

The above indicates that the ALJ did properly analyze Tucker's lumbar condition in her evaluation of Tucker's application. There is sufficient evidence to indicate that Tucker's lumbar condition is not a severe medical impairment as the evidence indicates that Tucker was and is able to do basic activities and chores without major physical restrictions. [*Id.* at pgs. 32, 372–75, 383–87 (indicating that Tucker is still able to do light chores, shopping, go to church, and spend time with her family); *see also id.* at pgs. 1456–55]. Even if the Court were to accept that Tucker's lumbar condition is a severe medical impairment, the ALJ did not deny her application on the grounds that she was not suffering from a severe medical impairment. As previously stated, the ALJ did find that Tucker's recurrent arrythmias qualified as a severe medical impairment. [*Id.* at pg. 24]. As the Acting Commissioner pointed out in her brief, the ALJ "found in favor of Plaintiff at step two and moved on to the next steps…" [R. 20 at pg. 4]. The ALJ's opinion also makes it clear that she took Tucker's other medical conditions, including her lumbar issues, into account

when issuing her decision. [R. 11 at pgs. 27-32]. Further, the *Daley* case is not applicable to this situation because the ALJ in that case made a finding that the applicant did not have a severe impairment, which did not occur here. 822 F.2d 1088 (6th Cir. 1987). Substantial evidence supports the ALJ's decision to not list Tucker's lumbar condition as a severe medical impairment and any error in not listing it as such is not enough to constitute reversible error. Thus, remand is unjustified on this ground.

B

Next, Tucker argues that the ALJ failed to adequately consider the opinion of Jessica Cox, an APRN. [R. 16 at pg. 3]. Ms. Cox's examination of Tucker from October of 2020 states that Tucker alleged she suffered from "[l]upus, fibromyalgia, pain and trembling in right arm, fatigue, unable to concentrate, memory problems, dizziness, weakness in both legs, unable to sit longer than 20 minutes, unable to stand longer than a few minutes, bone spurs in back, arthritis, anxiety, depression, and high cholesterol." [R. 11 at pg. 1454]. Ms. Cox also noted that Tucker "reports extreme fatigue and weakness of her lower extremities bilaterally, of which she states are related to her diagnosis of lupus and fibromyalgia that worsens with periodic exacerbations of the disease processes," and that Tucker was forced to take frequent breaks when performing daily activities. [*Id.*]. Tucker also reported that her bone spurs limited her ability to sit or stand for more than 20 minutes at a time. [*Id.* at pg. 1455]. However, at the time of the examination Tucker denied any ongoing pain. [*Id.*]. Ultimately, Ms. Cox determined the following from her examination of Tucker:

> Based on the objective evidence, her ability to squat appears to be compromised, especially on a repetitive basis. The claimant may have difficulty with prolonged walking, or prolonged standing during acute exacerbations of documented illnesses. Adequate and reasonable rest periods should be accommodated during acute exacerbations. She may have problems with heavy lifting and carrying but light weights should not be a problem. She can hear and understand

> normal conversational speech and is able to ambulate without the use of an assisted [*sic*] device. She communicated and socialized adequately. The claimant does not appear to have any environmental restrictions.

[*Id.* at pgs. 1457–58].

In her opinion, the ALJ included the following evaluation of Ms. Cox's findings:

> At a similar consultative internal medicine evaluation with Jessica Cox, APRN on October 29, 2020, the claimant recounted her history of pain, fatigue, concentration difficulties, memory problems, dizziness, weakness, and an inability to sit or stand for more than brief periods of time (Exhibit B14F). Ms. Tucker endorsed that her most significant problems were lupus, fibromyalgia, and fatigue, stating that she experienced extreme weakness in her lower extremities with periodic exacerbations of her disease processes. The symptoms caused her to take frequent breaks when performing activities of daily living. Ms. Tucker denied ongoing pain at the time of the examination. Ms. Cox observed regular breath sounds and cardiac functioning, good muscle bulk and tone bilaterally, full ranges of motion of all joints without pain, and no evidence of swelling, tenderness, or redness. Her lower extremity strength was 4/5 with fair effort, and all other assessed strength was 5/5 including grip. There was normal sensation bilaterally, and a right x-ray found only a mild decrease in the joint space medially. Ms. Cox noted that the mild reported weakness was not a significant impairment at that time, and opined she may have difficulty with prolonged walking or standing during periodic symptom exacerbations. She further opined that carrying light weights should not be a problem, and that apart from the aforementioned restrictions the claimant appeared to be functionally intact. The undersigned finds the assessment of Ms. Cox to be somewhat persuasive, as the limited adopted restrictions are well supported by the grossly normal exam findings. They are consistent with the conservative nature of Ms. Tucker's treatment, the lack of clinical findings at follow-up assessments, and Ms. Tucker's reported ongoing activities of daily living.

[*Id.* at pg. 31]. The ALJ ultimately determined the following:

> Based on the entirety of the record, the undersigned concludes that the claimant retains the capacity to lift and/or carry no more than 50 pounds of weight occasionally; lift and/or carry no more than 25 pounds frequently; stand and/or walk for six hours in an eight hour workday; and sit for six hours in an eight hour workday. The claimant's ability to push or pull is limited only by her ability to lift or carry. She can never climb ladders, ropes, or scaffolds, and she is limited to work requiring no exposure to workplace hazards such as unprotected heights and dangerous machinery. The residual functional capacity is supported by the medical evidence of record and the claimant's not entirely consistent testimony regarding her functional limitations.

[*Id.* at pg. 32].

Tucker claims that a "plain reading" of Ms. Cox's opinion would indicate that she should be limited to light work. [R. 16 at pg. 5]. Tucker therefore argues that the ALJ failed to give proper weight to Ms. Cox's opinion because the ALJ ultimately found that Tucker has the RFC to perform medium work, which did not include specific limitations to light work or to mandate rest periods for her.[4] [*Id.* at pg. 6 (quoting R. 11 at pg. 32)].

The Acting Commissioner, however, argues that Tucker has applied the wrong standards as it relates to this issue because the new regulations only require the ALJ to primarily explain how she considered supportability and consistency factors when articulating their consideration of medical opinions. [R. 20 at pg. 6 (citing 20 C.F.R. § 404.1520c(b)(2)]. Beyond this issue, however, the Acting Commissioner also argues that Ms. Cox's statements are conditional and vague, such that the ALJ was not required to include this language in her opinion. [*Id.* at pg. 8]. Finally, the Acting Commissioner asserts that even if Tucker was limited to light work, it would not change the ALJ's ultimate decision as Tucker's previous work as a cosmetologist would fall under the definition of a "light job" and thus the ALJ's finding that Tucker could perform her previous work would still be valid. [*Id.* at pg. 9].

20 C.F.R. § 404.1520c explicitly holds that it applies to any claims filed on or after March 27, 2017. 20 C.F.R. § 404.1527(c) goes into detail the various factors that are to be considered when determining the persuasiveness of medical opinions. However, as the Acting Commissioner points out, 20 C.F.R. § 404.1520c specifically states that, "[w]e will not defer or give any specific evidentiary weight, *including controlling weight*, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." (emphasis added). The regulation goes on to state that supportability ("The more relevant the objective medical evidence and

---

[4] The ALJ did note that certain limitations should be imposed as it relates to Tucker's ability to push or pull and to her exposure to workplace hazards. [R. 11 at pg. 32].

Page **11** of 14

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.") and consistency ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.") are the two "most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 404.150c(b)(2) & (c)(1)-(2).

Here, there is no dispute that, in this case, Tucker applied for social security and disability benefits on June 24, 2019. [R. 11 at pg. 21]. Therefore, 20 C.F.R. § 404.150c and its factors apply and any issues regarding "controlling weight" must be disregarded. The ALJ here specifically found that Ms. Cox's opinion was relevant and "consistent with the conservative nature of Ms. Tucker's treatment, the lack of clinical findings at follow-up assessments, and Ms. Tucker's reported ongoing activities of daily living." [*Id.* at pg. 31]. These findings can also be seen in the other medical examinations included in the record. [*See id.* at pgs. 1299, 1317, 1525, 1605]. Likewise, the ALJ explicitly contemplated Ms. Cox's opinion in rendering her RFC assessment. [*Id.* at pgs. 31–32; *cf. Smith v. Kijakazi*, No. 0:20-CV-00092-CHB, 2021 WL 6118659, at *5–6 (E.D. Ky. Dec. 27, 2021) (finding that remand was appropriate because the ALJ "completely ignored" a provider's medical opinion). Further, to the extent that the ALJ did not follow Ms. Cox's recommendations, it is worth noting that portions of her evaluation contain conditional language stating that Tucker "*may* have difficulty with prolonged walking, or prolonger standing…" and that she "*may* have problems with heavy lifting…" [*Id.* at pg. 1457] (emphasis added). As other courts in the Sixth Circuit have noted, when such qualifying language is used it

is not reversible error for the ALJ to not credit such statements in their decision. *See Benson v. Saul*, No. 3:19-CV-02804, 2021 WL 1554219, at *5 (N.D. Ohio Jan. 11, 2021), report and recommendation adopted sub nom. *Benson v. Comm'r of Soc. Sec.*, No. 3:19 CV 2804, 2021 WL 804150 (N.D. Ohio Mar. 2, 2021) ("The ALJ is correct in noting that Dr. Wierwille's opinion frequently employs qualifying language such as "may" or "likely," which merely suggest that some limitations are possible. Simply put, the court finds no reversible error stemming from an ALJ's decision not to credit such equivocal limitations.")

Finally, even if the Court were to find that the ALJ did not properly consider Ms. Cox's opinion, such an error would not justify remand in this case. Tucker notes that the ALJ's decision does not contain any limitations to light work or rest periods. [R. 16 at pg. 6]. While the ALJ found that Tucker could do medium work, Tucker's brief indicates that a finding that she can only do light work would be appropriate here. [*Id.*]. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Medium work, however, "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* Even if the ALJ determined that Tucker could only do light work, the ultimate decision would not have changed. Tucker's previous work was as a cosmetologist, which is considered a light job. [*See* R. 11 at pgs. 50–51]. Thus, even with a determination that Tucker is limited to light work, the ALJ would have still found that she could perform past relevant work, which would mean that the ALJ's finding that she is not disabled would still have occurred.

The Sixth Circuit has previously held that "no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)) (internal quotation marks omitted). Tucker has failed to demonstrate how a remand would cause a different result. Thus, remand is unjustified on this ground.

## CONCLUSION

Deborah Tucker appealed the Acting Commissioner's final decision that she is not entitled to disability insurance benefits. Tucker argues that the Administrative Law Judge's failure to classify her Lumbar Degenerative Disc Disease as a severe medical impairment is unsupported by substantial evidence and that the Administrative Law Judge failed to give proper weight to Jessica Cox, APRN's medical opinion. But the Administrative Law Judge's decision to not classify Tucker's lumbar condition as a severe medical impairment is supported by substantial evidence and the ultimate decision properly and reasonably evaluates Jessica Cox, APRN's medical opinion. The Acting Commissioner's final decision is therefore AFFIRMED. A separate judgment will follow.

Signed July 27, 2023.



Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge